UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MARK,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION,

Defendant.
_____/

Case No. 17-cv-13894

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT [11]

## I.    Introduction

Plaintiff John Mark initiated this action against the United States Department of Transportation on December 1, 2017. *See* Dkt. No. 1. He amended the complaint on May 30, 2018, and there he asserts two tort claims against the Defendant. *See* Dkt. No. 10. He raises claims of ordinary negligence grounded in the alleged unlicensed practice of medicine (Count I) and intentional infliction of emotional distress (Count II). *See id.* Because the United States is a Defendant in this action where Mark is bringing tort claims, this action arises under the Federal Tort Claims Act, 28 U.S.C. § 2679.[1]

---

[1] As the Defendant rightly notes, the caption must be amended to reflect that the United States is the proper Defendant here, not the United States Department of

On June 11, 2018, the Defendant moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 11. Mark responded to the motion on July 9, 2018. Dkt. No. 15. Then, on July 18, 2018, the Defendant replied in support of the motion. Dkt. No. 16.

Presently before the Court is the Defendant's Motion to Dismiss the Amended Complaint [11]. The motion is fully briefed and the Court will decide this motion without a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons detailed herein, the Court will GRANT the Motion to Dismiss [11]. The Court lacks subject matter jurisdiction over this matter and Mark has failed to state a claim upon which relief may be granted.[2]

## II.    Background

Mark worked as a flight engineer for Kalitta Chartes II, LLC ("Kalitta"), an air carrier. Dkt. No. 10, p. 2 (Pg. ID 32). He frequently worked at Detroit-Willow Run Airport and was en route to that airport when the events giving rise to this litigation took place. *Id.* Specifically, in April 2014, while working on a flight, Mark was a passenger in a plane's "nearly-disastrous unstable landing approach."

---

Transportation. Under 28 U.S.C. § 2679(a), lawsuits under the Federal Tort Claims Act are not cognizable against federal agencies; they only lie against the United States.

[2] To the extent Mark has requested leave to amend his complaint, the Court will deny that request. *See* Dkt. No. 15, p. 12 (Pg. ID 104). Indeed, any amendment would be futile. *See* FED. R. CIV. P. 15(a)(2).

*Id.* at p. 3 (Pg. ID 33). This near disaster was largely the result of the captain's loss of control over the plane, after having "becom[e] distracted and disoriented." *Id.* Mark witnessed the captain's breakdown and the first officer's pleas for the captain to relinquish control of the plane. *Id.* Although the plane ultimately made a safe landing, Mark was understandably shaken. *Id.* at p. 4 (Pg. ID 34).

In his first return to the cockpit (in a simulator) after the near crash, Mark failed a previously scheduled proficiency exam. *Id.* Mark claims that, when he took the exam, he was suffering from post-traumatic stress disorder ("PTSD") stemming from the horrifying landing. *Id.* at p. 5 (Pg. ID 35). Consequently, he filed an Aviation Safety Action Program ("ASAP") Report regarding his physical and mental condition. *Id.*

His report went to a three-person event review committee ("ERC"). The committee was to review any safety concerns brought to its attention, and it acted by consensus. *Id.* at p. 2 (Pg. ID 32). The ERC was comprised of one Federal Aviation Administration ("FAA") inspector and two Kalitta employees, a management representative and a flight crew representative. *Id.* at pp. 2–3 (Pg. ID 32–33). And the committee was part of a Memorandum of Understanding ("MOU") between Kalitta and the FAA regarding ASAP. *Id.* The MOU, in turn, set the ERC's mandate. *Id.*

Mark alleges that the MOU detailed procedures for whenever airmen had medical qualification or certification issues.  *Id.*  According to Mark, the relevant procedures demanded that the ERC immediately communicate any medical issues to the appropriate FAA Regional Flight Surgeon.  *Id.* at p. 3 (Pg. ID 33).  Then the FAA inspector on the ERC, in this case Barry Rogers, was to follow the surgeon's instructions regarding any response to the reported medical issue.  *Id.*

The ERC received Mark's ASAP Report and, despite Mark's representations, it did not escalate Mark's health issues to a Regional Flight Surgeon or any other medical personnel.  *Id.* at p. 6 (Pg. ID 36).  Rather, the ERC, including Rogers, simply examined Mark's ASAP Report and determined that he was fit to fly.  *Id.*

Based on that determination, Mark took a second flight test, which he also failed.  *Id.* at p. 8 (Pg. ID 38).  He maintains that he failed this test because of effects lingering from the near crash.  *Id.*  The second failed test resulted in the termination of his employment with Kalitta, and the corresponding loss of health insurance and income.  *Id.*  Mark alleges that he was later diagnosed with PTSD.  *Id.*  He further maintains that, had Rogers escalated his health concerns to the appropriate medical personnel, Mark would not have lost his job at Kalitta and would not have missed out on the accompanying income and health insurance.  *Id.*

## III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to assess whether a plaintiff has stated a claim upon which relief may be granted.  *See* FED. R. CIV. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[E]ven though the complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.' "  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must construe the complaint in favor of a plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  *Twombly*, 550 U.S. at 570.  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  To survive a Rule 12(b)(6) motion, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting

*Twombly*, 550 U.S. at 553–54). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal citations and quotations omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotation marks omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal citations and quotation marks omitted).

## IV. Discussion

The Defendant asserts that the Court lacks subject matter jurisdiction over this litigation and also that Mark has not adequately alleged claims for ordinary negligence (Count I) and intentional infliction of emotional distress (Count II). The Court agrees and will grant the Defendant's motion to dismiss.

### A. Subject Matter Jurisdiction

Sovereign immunity shields the United States from actions regarding contract rights. 28 U.S.C. § 2680(h) (providing that "[a]ny claim arising out of . . . interference with contract rights" is not covered under the Federal Tort Claims Act).

Certain tort claims, however, are actionable against the United States. *See* 28 U.S.C. § 1346(b).

Because this case is about the interference of contractual rights, sovereign immunity applies to Mark's claims and this Court lacks subject matter jurisdiction. Mark's tort claims are thinly-veiled contract claims. And "[i]n determining whether [a] plaintiff's claim falls within the law enforcement exception to the intentional tort exception, [a court] must look to the substance of the claim and not limit [its] review to how the plaintiff pleaded the cause of action." *Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012) (collecting cases); *see also Meeks v. Larsen*, 999 F. Supp. 2d 968, 976 (E.D. Mich. 2014) ("Courts must construe the requirements of the FTCA strictly because it is a waiver of sovereign immunity." (citing *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002))).

The substance of Mark's claim is first that Rogers failed to comply with the terms of the MOU, which was an agreement between the FAA and Kalitta. Second, he argues that Kalitta terminated his employment contract because of Rogers's conduct. He continues that the termination of his employment contract caused him significant harm, including the loss of his health insurance. These issues plainly reflect a contract dispute. Consequently, the Government is entitled to sovereign immunity and the Court lacks subject matter jurisdiction over Mark's claims.

B.      Ordinary Negligence (Count I)

Even if this Court had subject matter jurisdiction here, Mark's ordinary negligence claim would still not survive the motion to dismiss.  According to Mark, the MOU obligated Rogers to advise the Regional Flight Surgeon of Mark's health concerns.  Dkt. No. 10, p. 10 (Pg. ID 40).  Rogers breached that duty, Mark contends, by not reporting his health issues to the surgeon and not diagnosing his PTSD.  *Id.* Mark claims that Rogers negligently engaged in the unlicensed practice of medicine by concluding that Mark was healthy enough to return to work.  *Id.*

Michigan law defines the "practice of medicine" as "the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts."  MICH. COMP. LAWS § 333.17001(h).  To start, Mark cites no authority indicating that an ordinary negligence claim under Michigan law lies on the basis of allegations regarding the unlicensed practice of medicine.

He cites to *Kuznar v. Raksha Corp.*, 750 N.W.2d 121, 123 (Mich. 2008), but that case addressed a different issue.  The defendants there were a pharmacy employee and her employer, a pharmacy.  The case concerned whether the defendants were liable for one of either medical malpractice or ordinary negligence, as the defendants had purportedly distributed the wrong medicine.  *Id.* at 123.  The

court held that the defendants could not be sued for medical malpractice because, among other reasons, the pharmacy was not a licensed health-care professional, or health care facility or agency. *Id.* But the pharmacy "[could] be directly liable for ordinary negligence for operating without having a licensed pharmacist on site and for allowing a nonpharmacist to dispense medications." *Id.* And the employee could be liable for her own ordinary negligence. *Id.* at 128.

*Kuznar* is inapposite. At no point in that decision does the court discuss whether an ordinary negligence claim is available under an unlicensed practice of medicine theory. Additionally, that case involved a different statute and regulatory scheme than those at issue in this matter. *See* Mich. Comp. Laws § 333.17741. Therefore, contrary to Mark's claims, no case law demonstrates that a private right of action in negligence exists in Michigan for claims regarding the unlicensed practice of medicine.

Even assuming that an ordinary negligence claim is cognizable for the unlicensed practice of medicine, Mark has not plausibly alleged that claim. To survive a motion to dismiss on an ordinary negligence claim, a plaintiff must plead that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Leone v. BMI Refractory Servs., Inc.*,

893 F.3d 359, 362 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 556 (Mich. 2011)).

Regardless of whether Rogers owed Mark a legal duty, Mark has not plausibly alleged that Rogers breached that duty through the unlicensed practice of medicine. Indeed, Mark alleges that Rogers failed to engage in any medical act. Mark maintains, for example, that Rogers did not examine his condition or even meet with him regarding his ailment. Dkt. No. 10, p. 6 (Pg. ID 36). Specifically, Mark asserts that "Rogers did not perform any of the inquires or exams that a mental health professional would ordinarily conduct to evaluate whether an individual has PTSD or other health concern[s]." *Id.* at pp. 6–7 (Pg. ID 36–37). Had Mark claimed that Rogers conducted such inquiries or exams, then perhaps Mark would have adequately alleged that Rogers was negligent in engaging in the unlicensed practice of medicine. Instead, Mark's theory is quite contradictory. It implies that Rogers should have engaged in the unlicensed practice of medicine: Mark claims that Rogers engaged in the unlicensed practice of medicine because he did not perform tests and exams ordinarily conducted by only licensed medical professionals.

In sum, Mark has not plausibly pled a negligence claim relating to the unlicensed practice of medicine, assuming one even exists under Michigan law. Therefore, Mark's ordinary negligence claim will not survive the motion to dismiss.

C.     Intentional Infliction of Emotional Distress (Count II)

Plaintiff also brings a claim for the intentional infliction of emotional distress. This count, too, lacks merit. The Michigan Supreme Court has never authorized such a claim, although numerous lower courts in Michigan have done so.

"This claim requires a plaintiff to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Jones v. Muskegon Cty.*, 625 F.3d 935, 948 (6th Cir. 2010) (citing *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005)). "[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Salser v. Dyncorp Intl. Inc.*, 170 F. Supp. 3d 999, 1005 (E.D. Mich. 2016) (internal quotation marks omitted) (quoting *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)). Rather, "[s]uch conduct must be 'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Jones*, 625 F.3d at 948 (quoting *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).

Rogers's conduct does not rise to this level. *See, e.g.*, *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 795 (E.D. Mich. 2014) (noting that defendants' purported real estate investment fraud scheme, if true, "was unlawful, and even criminal," but the alleged scheme still did not warrant the complaint's survival on a motion to dismiss). Mark alleges that Rogers never examined him or

met with him individually, and that Rogers simply determined—as did the two other members of the ERC—that Mark was fit to return to work. Because nothing in these allegations "go[es] beyond all possible bounds of decency," Mark has not properly pled an intentional infliction of emotional distress claim.

## V. Conclusion

Mark has alleged a claim against the Defendant for both ordinary negligence and intentional infliction of emotional distress. The Defendant moved to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 11. In light of the foregoing, the Court will GRANT the Defendant's Motion to Dismiss [11]. The Court lacks subject matter jurisdiction and Mark has not stated a claim upon which the Court may grant him relief.

IT IS SO ORDERED.

Dated: August 14, 2018

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 14, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk